IN THE UNITED STATE DISTRICT COURT
FOR SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CRYSTAL J. MOORE | * | CIVIL ACTION NUMBER |
| | * | |
| Plaintiff, | * | _____ |
| | * | |
| v. | * | JURY TRIAL DEMANDED |
| | * | |
| TOWN OF LATTA, SOUTH CAROLINA | * | |
| and JARRETT TAYLOR, Individually | * | |
| | * | |
| Defendants. | * | |

# COMPLAINT

COMES NOW Plaintiff, Crystal J. Moore ("Ms. Moore" or "Plaintiff") and files this Complaint ("Complaint") against the Town of Latta, South Carolina ("Defendant Latta") or ("Town"), and Jarrett Taylor ("Defendant Taylor") or collectively ("Defendants") showing the Court as follows:

## JURISDICTION AND VENUE

1.

This action is for retaliation in public employment brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Fourteenth Amendment to the U.S. Constitution.

2.

Jurisdiction is specifically conferred on the Court by 28 U.S.C. §§ 1331 (federal question and 1343 (civil rights).

{00601926.}

3.

This action is further brought pursuant to various South Carolina state law claims to be herein further described.

4.

This Court has supplemental jurisdiction over the South Carolina state law claims, pursuant to 28 U.S.C. § 1367.

5.

Venue is proper in this federal judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred within the judicial district. Presently and all times, relevant, Defendants have conducted the unlawful acts and omissions giving rise to Plaintiff's claims in the Florence Division of the United States District Court for South Carolina.

**PARTIES**

6.

Plaintiff Ms. Moore is an individual subject to the jurisdiction and venue of this Court.

7.

Defendant Latta is a municipality located in Dillon County, South Carolina. It is a body corporate with the power to sue and be sued and is a "person" for purposes of claims under 42 U.S.C. § 1983. Defendant Latta may be served with process by delivering a summons and a copy of this complaint to the Town Clerk, Rebecca Page at Latta Town Hall, 107 NW Railroad Avenue, Latta, SC 29565.

8.

Upon information and belief, Defendant Taylor is considered a resident of the State of South Carolina, subject to the jurisdiction and venue of this Court and may be personally served

with process at his place of employment at 107 NW Railroad Avenue, Latta, SC 29565. Defendant Taylor is being sued individually.

9.

Defendant Latta is considered an "employer" within the meaning of 42 U.S.C. § 2000e(b). Upon information and belief, it had more than 15 employees in each of the 20 or more calendar weeks in the current or preceding year.

10.

At all times relevant to this action, Ms. Moore was an "employee" within the meaning of 42 U.S.C.§ 2000e(f), and she is entitled to the protection provided thereunder.

## BACKGROUND FACTS

On or around June 15, 2015, Dorjibria K. Casey ("Ms. Casey), an African American female, was hired as a utility clerk with Defendant Lattas Water and Sewer Department.

11.

When Ms. Casey was hired, her department supervisor was Willie Hooks (Mr. Hooks), a Caucasian male.

12.

Defendant Hooks made inappropriate frequent, repeated, and unwanted sexual comments to Ms. Casey while at the workplace.

13.

For example, on or about April 16, Mr. Hooks made the following comments to Ms. Casey in the office:

- How you like your sex?
- Have you tried [sexual actions] before?
- I like when you wear jeans.

{00601926.}                                3

- She popping her lips like that because you know what she be doing.
- Your ex-boyfriend be knocking that thing down, don't he?
- What underwear you like to wear?
- Your ex-boyfriend is telling people that you give good blowjobs.

14.

Mr. Hooks' sexual harassment of Ms. Casey included unwanted and uninvited physical contact. For example, on at least two separate occasions while at work, Mr. Hooks picked Ms. Casey up and threw her over his shoulder.

15.

On another occasion, Mr. Hooks rubbed Ms. Casey's leg from her knee down toward her foot after another Caucasian supervisor, Curt Miller, commented that African American women did not shave.

16.

The sexual nature of Mr. Hooks' comments and behavior were unwanted, pervasive, and hostile.

17.

On or about July 2016, Ms. Casey reported Mr. Hooks sexual harassment to Defendant Latta and Defendant Taylor.

18.

Between the end of July 2016 and August 12, 2016, Ms. Hooks continued to sexually harass Ms. Casey.

19.

On August 12, 2016, Ms. Casey reported Mr. Hook's sexual harassment to Ms. Moore, the town of Latta's Police Chief.

20.

Prior to notifying Dillion County Sheriff's Office, Ms. Moore made several attempts to notify Defendant Taylor that a formal complaint would be made regarding Ms. Casey's claims against Mr. Hooks.

21.

Ms. Casey then reported Mr. Hook's sexual harassment to the Dillon County Sheriff's Office.

22.

At approximately 5:18 on the evening of August 12, 2016, Ms. Moore notified Mr. Taylor via text message that a deputy from the Dillon County Sheriff's Office was at town hall regarding the incident report filed by Ms. Casey alleging sexual misconduct by Mr. Hooks.

23.

At approximately 1:56 on the morning of August 13, 2016, Mr. Taylor responded to Ms. Moore requesting more details.

24.

At approximately 7:10 on the morning of August 13, 2016, Ms. Moore responded to Mr. Taylor's text message, explaining that Ms. Casey had come to the Police Department and disclosed that she was continuing to be sexually harassed by Mr. Hooks. Ms. Moore explained that since Ms. Casey had already disclosed the ongoing harassment to Mr. Taylor and the harassment continued, Ms. Casey wanted to file a formal police report.

25.

On August 13, 2016, Defendant Taylor provided Ms. Moore with a written reprimand for failure to properly follow rules as set forth in the employee handbook, Policy 1-3.

26.

Per the Town of Lattas Personnel Manual, Policy 1-3(b) provides that any employee who feels they are being sexually harassed should immediately report the incident to their supervisor. The policy further states that if the employee feels uncomfortable discussing the harassment with their supervisor, they should then make a report to their department head, or the mayor, or the designee.

27.

Policy 1-3(b) further mandates that any supervisor who receives a complaint of sexual harassment should immediately report it to the department head, or the mayor, or the designee. The policy in question does not address the formal filing of a criminal complaint made by one employee of the town against another employee of the town. The policy encourages mandated reporting to ensure that the issue complained of can be properly investigated and handled by the Town. It is not a restriction on an employee or supervisor to file a criminal complaint with the proper authorities.

28.

Defendant Taylor provided a written summary outlining Ms. Moore's failure to comply with Policy 1-3(b). In his summary Defendant Taylor states that he found Ms. Moore's failure to contact the department head, mayor, or designee careless, going on to state that her decision to call the Sheriff without first speaking with the town administrator, the assistant administrator, or her two other immediate supervisors when the town was faced with an employment issue that

could lead to legal ramifications showed that Ms. Moore lacked leadership and strategic direction for determining priorities and objective necessary to meet the city's needs.

29.

To be clear, Defendant Taylor was on notice that Mr. Hooks had been sexually harassing Ms. Casey since July of 2016. Defendant Taylor failed to conduct a proper investigation. As a result of Defendant Taylor's failure to appropriately address the conduct of Mr. Hooks, Ms. Casey continued to be the victim of sexual harassment. Frustrated and fearful of Mr. Hooks continued advances, Ms. Casey asked Ms. Moore to file a formal police report. Because the police department had a conflict of interest, Ms. Moore asked the Dillon County Sheriff's Office to handle the criminal investigation.

30.

On or about July 14, 2021, Defendant Taylor states in a text message that he spoke with Ms. Casey and that he would speak with Mr. Hooks in the morning regarding her concerns relating to Mr. Hook's inappropriate behavior towards Ms. Casey. There is no record of Defendant Taylor having investigated or reprimanding Mr. Hooks as he was called to do in accordance with the town's own policies.

31.

If anyone failed to follow Policy 1-3, it was Defendant Taylor as he failed to properly investigate Ms. Casey's claims in accordance with the town policy or formally reprimand Mr. Hook for his deviant behavior towards Ms. Casey.

32.

Prior to August 12, 2021, the date Ms. Casey filed a formal criminal police report with the Dillan County Sheriff's Department regarding Mr. Hook's continued sexual harassment of Ms.

Casey, Ms. Moore had not received any reprimands in her role as Chief of Police for the town of Latta.

33.

On August 22, 2016, Ms. Moore received three additional reprimands.

34.

The first of three reprimands issued to Ms. Moore on August 22, 2016, was a verbal reprimand for failing to ensure vehicle inspections were completed. While Ms. Moore agreed she did not use the outdated checklist designed to ensure compliance with the town policy regarding vehicle inspections, she insists that her department maintained more precise records regarding vehicle maintenance than was necessary in the checklist and that the department had stopped using the outdated checklist years prior to her receiving this reprimand.

35.

Ms. Moore had been using the updated reporting method for ensuring vehicle maintenance since becoming Chief of Police and had never been questioned or disciplined regarding vehicle maintenance records until after she assisted Ms. Casey in coordinating with the Dillion County Sheriff's Department to send a deputy to Town Hall to take Ms. Casey's formal complaint against Mr. Hooks for sexual harassment.

36.

The second of three reprimands issued to Ms. Moore on August 22, 2016, was for allegedly disclosing an officer's salary during a council meeting on August 11, 2016.

37.

Ms. Moore admits that, during the counsel meeting, she did disclose that an officer was resigning from the police department. She further admits that she explained to members of the board that the officer was leaving because he received an offer from another department that would pay $13.09 an hour.

38.

Ms. Moore denies, however, that she disclosed the officer's current salary (or the salary he was making while employed with the Town) and maintains that there is no policy in place preventing the disclosure regarding why the officer was resigning.

39.

The third of the three reprimands issued to Ms. Moore on August 22, 2016, alleged that Ms. Moore used employee information in an unauthorized manner.

40.

Ms. Moore denies using employee information in an unauthorized manner. As the town's employee representative for PEBA, Ms. Moore did have access to personnel files and often accessed those files in order to complete insurance benefits and retirement issues for employees. She further admits that, at the time of the accusation, she was training the town's clerk on how to handle these issues.  Ms. Moore further admits that she has had to access said records in the past to assist department heads with taking disciplinary action against town employees.

41.

Ms. Moore states that with regards to the incident in question, a citizen asked the Town Administrator, Defendant Taylor, for permission to ask employees at town hall questions regarding a disciplinary action taken against a particular town employee. Ms. Moore states that said citizen asked the clerk certain questions to which the clerk, not Ms. Moore, provided answers. However, the reprimand the citizen was requesting was never located and as such was not disclosed.

42.

After receiving her third reprimand, Ms. Moore was placed on a five-day suspension. On August 30, 2016, after serving her five-day suspension, Ms. Moore returned to her position as the Chief of Police for the Town of Latta.

43.

On September 2, 2021, The New York Times ran an article regarding the reprimands Ms. Moore received. Defendant Taylor commented in the article that Ms. Moore and the town of Latta were back on good footing now that Ms. Moore had served her punishment. Defendant Taylor went on to say that, "Far as I'm concerned, it's over and done with."

44.

Ms. Moore was terminated on September 8, 2016.

45.

Ms. Moore did not receive any reprimands between returning to work on August 30, 2016, and the date she was terminated, September 8, 2016.

46.

Ms. Moore, did, however, have valid concerns that her job was in jeopardy as exhibited by the town administrator, Defendant Taylor, issuing her a number of baseless reprimands after she assisted a town employee in filing a formal complaint against another town employee for sexual harassment, conduct Defendant Taylor had been made aware of and failed to act upon in compliance with the Town's policy, and the fact that prior to any police report being filed, Ms. Moore had not received any reprimands during her tenure with the Department.

47.

The only intervening event between September 2, 2016, when Defendant Taylor told The New York Times that the town of Latta and Ms. Moore were back on good terms and Ms. Moore's termination on September 8, 2016, was a letter dated September 7, 2016, sent by Ms.

Moore's, then attorney of record, M. Malissa Burnette (Ms. Burnette), alerting Defendant Latta and Defendant Taylor that Ms. Burnette had been retained by Ms. Moore to protect her legal rights with respect to her employment and reputation in the community.

48.

In the letter addressed to Defendant Taylor, and Brian Mason (Mr. Mason), the Mayor Pro Tempore, Ms. Burnette advised both men that while she was in the process of gathering extensive evidence regarding the town's unlawful retaliatory written reprimands leading to the five-day suspension of Ms. Moore, it had come to her attention that a Town Council meeting was scheduled for the previous night. As such, Ms. Burnette believed it necessary to put the town and its council members on notice that Ms. Moore participated in activity protected by 42 U.S.C. §2000e-3 when she responded in the manner she did regarding Ms. Casey's complaint that she was being sexually harassed by Mr. Hooks.

49.

Ms. Bernette further accused the two men of falsely implying among other things, that Ms. Casey had not previously reported the sexual harassment to Defendant Taylor and the reprimand on August 22, 2016, was executed in an effort to deflect attention from Defendant Taylor's own failure to properly handle the sexual harassment matter in the first place.

50.

Ms. Bernette further alleged that it was not until after Ms. Moore refused to write a statement saying that the perpetrator of the sexual harassment against Ms. Casey, Mr. Hooks, had no "ill intent" regarding his interactions with Ms. Casey, the victim of his sexual harassment, that Defendant Taylor actually issued the written reprimand to which he attached a statement falsely

implying, among other things, that the employee had not previously reported the sexual harassment to him.

51.

Ms. Bernette's letter further stated that the additional reprimands, all three issued on the same day, were further proof of discriminatory terms and conditions of employment. And that the Town and Defendant Taylor's conduct as a whole was in direct violation of the statute, which forbids retaliation against Ms. Moore in any manner.

52.

Ms. Bernette advised the Town and Defendant Taylor that Ms. Moore intended to take appropriate formal measures to address these statutory breaches.

53.

Ms. Bernette's letter further questioned a new protocol the Town had implemented as of August 15, 2016, requiring all employees to clock in and out, whether the employees were exempt or non-exempt pursuant to the Fair Labor Standards Act. And advised that as counsel for Ms. Moore, Ms. Bernette would be paying close attention to the directive to determine whether the measure was being utilized in any punitive or unlawful manner.

54.

Ms. Bernette's letter ended by putting the town on notice to preserve and place a litigation hold upon all documents, electronic, devices (whether personal or Town-owned), and to keep any information in any format whatsoever, including but not limited to social media postings. The letter further stated that Any alteration, deletion, transfer, manipulation, destruction, or concealment of same would result in spoliation of evidence which the Plaintiff, Ms. Moore, would be entitled to an inference that such evidence would have been favorable to her.

55.

The next day, Ms. Moore received a termination letter from the Town and Defendant Moore.

56.

Ms. Moore filed a charge against the Defendants with the U.S. Equal Employment Opportunity Commission ("EEOC").

57.

On April 23, 2021, the EEOC issued Ms. Moore a Dismissal and Notice of Rights.

58.

This action was timely filed within 90 days of the Notice of Right to Sue and within the Statute of limitations as to all claims.

## CAUSE OF ACTION

### COUNT 1 -RETALIATION IN VIOLATION OF TITLE VII (AGAINST ALL DEFENDANTS)

59.

Plaintiff incorporates by reference all of the previous paragraph of this Complaint as if set forth fully herein.

60.

Plaintiff engaged in protected activity under Title VII by assisting Ms. Casey in filing a formal complaint against Mr. Hooks for sexual harassment by requesting The Dillon County Sheriff's Office send a deputy to town hall to create a police report.

61.

Defendant Latta and Defendant Taylor retaliated against Plaintiff for engaging in protected activity under Title VII by disciplining her for the conduct that other employees were not disciplined for and or for conduct that had not previously been considered an issue.

62.

Defendants' retaliatory actions toward Plaintiff are in violation of Title VII and were taken in bad faith.

63.

As a result of Defendants' retaliatory actions, Plaintiff has suffered emotional distress, inconvenience, humiliation, and other indignities.

64.

Pursuant to Title VII, Plaintiff is entitled to damages, including compensatory damages, attorneys' fees, and costs.

## COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (AGAINST DEFENDANT TAYLOR)

65.

Plaintiff incorporates by reference all of the previous paragraphs of this Complaint as if set forth fully herein.

66.

Defendant Taylor's unlawful offensive and harmful conduct towards Ms. Moore was willful, wanton, and in reckless disregard for Ms. Moore's health or safety.

67.

Defendant Taylor's conduct at all relevant times was extreme and outrageous when he subjected Ms. Moore to embarrassment, harassment, humiliation, degradation, and emotional distress by defaming her in the press and on social media.

68.

As a direct and proximate result of Defendant Taylor's intentional, reckless, improper, wrongful, malicious, extreme, and outrageous acts and conduct, Ms. Moore suffered damages for

which Defendant Taylor is liable, including general, special, and punitive damages, in an amount to be proven at trial.

69.

Defendant Taylor's actions were undertaken intentionally, willfully, wantonly, recklessly, maliciously, and with utter disregard for and reckless indifference of Ms. Moore's rights, authorizing a punitive damages award.

### COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST DEFENDANT LATTA)

70.

Plaintiff incorporates by reference all of the previous paragraphs of this Complaint as if set forth fully herein.

71.

For the above averred reasons, Defendant Taylor is liable for intentionally inflicting emotional distress on Ms. Moore.

72.

Such actions were committed during and within the scope of Defendant Taylor's employment with Defendant Latta and in furtherance of Defendant Lattas business.

73.

Because of the acts of intentionally inflicting emotional distress against Ms. Moore were committed during and with the scope of their employment with Defendant Latta, Defendant Taylor's liability for such actions is imputed to Defendant Latta.

74.

Defendant Lattas refusal to take action to prevent harassing and retaliatory actions against Ms. Moore, and Defendant Lattas own participation in the unlawful conduct toward Ms. Moore

makes Defendant Latta independently liable for its own intentional infliction of emotional distress of Ms. Moore.

### COUNT VI – ATTORNEYS' FEES
### (AGAINST ALL DEFEENDANTS)

75.

Plaintiff incorporates by reference all of the previous paragraphs of this Complaint as if set forth fully herein.

76.

As a direct and proximate result of the above alleged allegations and averments, Ms. Moore as incurred substantial attorney's fees and costs.

77.

Additionally, Ms. Moore is entitled, pursuant to 42 U.S.C. § 2000e-5(k), and 28 U.S.C. § 1988, to recover her attorneys' fees and expenses incurred in protecting her rights in this action.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a TRIAL BY JURY, and respectfully prays the Court render a judgement as follows:

a) That Plaintiff be awarded damages and judgment from Defendants for violating 42 U.S.C. § 1983;

b) That Plaintiff be awarded damages and judgment from Defends for Title VII retaliation, in an amount to be proven at trial;

c) That Plaintiff be awarded punitive damages due to the willful misconduct, malice wantonness, and want of care, in an amount to be proven at trial;

d) That Plaintiff be awarded attorneys' fees and costs;

e) That Plaintiff receive nominal damages for the deprivation of her protected rights;

f) That this matter be tried by a jury; and

g) For such other and further relief as this Court deems just and appropriate.

Respectfully submitted this 8th day of July, 2018.

SMITH & LISS, LLC

Ray S. Smith III
South Carolina Bar No. 12017 (USDC # 5519)
rsmith@smithliss.com
Attorney for Plaintiff

Five Concourse Parkway
Suite 2600
Atlanta, Georgia 30328
Telephone 404-760-6000
Facsimile 404-760-0225